# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

## CHARLESTON DIVISION

| | |
|---|---|
| **Latricia Bowen**, | ) Civil Action No. 2:10-2509-RMG-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| **Darby Development Company, Inc. and** | ) |
| **Darby Realty Company, Inc.**, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This action has been filed by the Plaintiff, a former employee of the Defendants, asserting claims of discrimination as well as wage claims under the Fair Labor Standards Act (FLSA) and the South Carolina Payment of Wages Act.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on February 9, 2012. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion on March 12, 2012, following which the Defendants filed a reply memorandum on April 2, 2012. A hearing on the motion was held on April 13, 2012, at which both parties were represented by able counsel.

The Defendants' motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is
(continued...)



1

The Defendant Darby Development Company, Inc. ("Darby Development" or "Defendant")[3] owns and operates residential real estate such as apartments. In September 2007, Darby Development hired the Plaintiff as an assistant property manager for the Brackenbrook Apartments, one of Darby Development's properties. Plaintiff's Deposition, p. 24. Upon being hired, Plaintiff received a letter from Victoria Cowart, Darby Development's Vice President of Property Management, explaining the starting salary and schedule for office staff. Plaintiff's Deposition, pp. 145-146; see also Defendant's Exhibit E, Cowart Deposition, p. 6. Plaintiff was also given a copy of the Defendant's employee handbook to read and sign. Plaintiff's Deposition, p. 145; see also Plaintiff's Exhibit C [Handbook]. Although Plaintiff was interviewed and offered the position by Cowart, her direct supervisor was Tiffany Sauter, Brackenbrook's Property Manager. Plaintiff's Deposition, pp. 20-22, 25. Sauter's immediate supervisor was Cowart, who in turn reported to Gordon Darby, the Defendant's President. Cowart Deposition, pp. 6-7.

The record reflects that the Defendants use a process of review whereby potential tenants "shop" management personnel and then submit a written evaluation to Cowart detailing how the employees performed. This process involves a person hired by the Defendant going out to various properties posing as apartment hunters, and then documenting how they were treated. Cowart

---

[1](...continued)
a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed herein in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]Defense counsel represented at the hearing that Darby Development Company is a subsidiary of Darby Realty Company, Inc., the other named Defendant.



Deposition, p. 24. Plaintiff received a "shopped" report from Cowart on January 4, 2008 in which she received good ratings for telephone sales; meeting, greeting and touring; and closing; but poor marks for follow-up and general matters. Plaintiff received a total of seventy-four points out of one hundred and five, for a rating of seventy-one percent (71%) on this shop report. Plaintiff was advised, however, that employees were required to score at least eighty-nine percent (89%) on their shop reports, and was also notified that she would be shopped again sometime over the next forty-five days.

This shop report also resulted in a memorandum of January 8, 2008 from Cowart to Sauter (at that time Sauter's last name was Brooks), with a copy to the Plaintiff, discussing Plaintiff's performance, including a discussion of Plaintiff's compliance with the Defendant's dress code. The Defendant's handbook includes a dress code which requires employees to "present a business like appearance", and provides that "[a]ll employees should practice common sense rules of neatness, good taste and comfort". Defendants' Exhibit T, p. 29; Defendants' Exhibit F. Plaintiff testified that she suffers from Grave's disease and cannot shave her legs due to the pain it causes her. Plaintiff's Deposition, pp. 54, 56. Cowart stated in her memo that: "females who wish to have unconventional body hair, must cover it so as to present a neat and non-distracting appearance. Therefore, if [Plaintiff] wishes to maintain this aspect of her appearance, she may only wear career apparel pants and no skirts."[4] The memo closed with Cowart stating: "know my door is open to either of you should you wish to discuss any or all of this." Defendants' Exhibit H. Plaintiff was required to sign the memorandum showing that she had received a copy.

---

[4]Brackenbrook employees wear clothing from the career apparel clothing line. See Defendants' Exhibits E, F, L, and T, p. 29; see also Plaintiff's Deposition, pp. 169-170.



Plaintiff testified that following this writeup, she spoke with both Sauter and Cowart and told them that she did not believe the writeup was fair. Plaintiff testified at her deposition that: "I am an African American woman who chooses not to shave her legs, and I thought that they were in some way being somewhat prejudice towards me." Plaintiff's Deposition, pp. 57-58. However, the record of a phone call between Plaintiff and Cowart two days after issuance of the memo, wherein Plaintiff and Cowart discussed this matter, does not reflect that race was mentioned during that conversation; Defendants' Exhibit I; and Plaintiff does not dispute the accuracy of Defendants' Exhibit I recounting the substance of this conversation. Plaintiff's Deposition, pp. 164-165. However, while Plaintiff conceded at her deposition that she was not sure that she had ever indicated to Cowart that she believed her race was involved in this decision, she testified that she did indicate this to Sauter, and that she believed Sauter would have told Cowart about her comments. Plaintiff's Deposition, p. 92.

Plaintiff testified that she "made it clear" to Sauter that she believed the issue regarding her legs was a racial issue, and believed Cowart knew this as well because "[Sauter] told [Cowart] everything pretty much when it came to work-related issues". Plaintiff further conceded, however, that she did not know of any other specific instances in which Cowart had allegedly discriminated against African Americans. Plaintiff's Deposition, pp. 92, 98. The record also reflects that, the following week, Cowart obtained a salary increase for the Plaintiff from Gordon Darby. Plaintiff's Deposition, pp. 167-169; see also Defendants' Exhibit K. Nevertheless, in the spring of 2008 Plaintiff consulted with an attorney, researched the issue of not shaving her legs, and even contacted the EEOC about possibly filing a claim; Plaintiff's Deposition, pp. 84-85, 98-100; although there is no evidence that anyone from the EEOC ever contacted the Defendant about this matter.

4



<u>Plaintiff's Deposition</u>, pp. 85-86; <u>Cowart Deposition</u>, pp. 108-109.

    Four months later, on May 13, 2008 Cowart wrote a file memo regarding a visit she had made to Brackenbrook on that date.  Cowart wrote that when she arrived Plaintiff had not been properly attired, that she was not wearing proper business shoes, nor was she wearing her career apparel blazer.  Plaintiff had to go to her apartment to retrieve these items, as she did not have them in her office.  Cowart further noted that a review of Plaintiff's guest cards revealed the "consistent problem we have had since [Plaintiff's] hire in that her follow-up with the clients was not shown on the reverse [of the cards]."  Cowart wrote that she counseled Plaintiff on her failure to do proper follow-ups, and also explained the necessity of wearing career apparel.  Finally, the memo indicates that, after Cowart had left, Sauter discussed the matter with Plaintiff again and advised Plaintiff that she would be fired if she was again found not to be following proper follow-up policy.  <u>Defendant's Exhibit L</u>; <u>see</u> <u>also</u> <u>Plaintiff's Deposition</u>, pp. 169-170.  At her deposition, Plaintiff admitted that this incident had occurred, that all employees are required to wear proper shoes and a career apparel blazer while at work, and that she had not been properly dressed on that date.  <u>Plaintiff's Deposition</u>, p. 170.  Plaintiff also admitted that the memo discussing her problems with the guest cards was accurate.  <u>Plaintiff's Deposition</u>, p. 169; <u>see</u> <u>also</u> <u>Defendants' Exhibit M</u> [followup memo from Sauter documenting this incident, and signed by the Plaintiff].

    Brackenbrook was again "shopped" on May 20, 2008; <u>Defendant's Exhibit N</u>, pp. 4-8; following which Plaintiff received a shop report from Cowart on June 12, 2008 documenting the results.  Plaintiff was advised that she had received a score of 82.1% for meeting, greeting and touring; 45% for closing; and 56.5% for follow-up and General, for an overall score of 70.4 %.  Plaintiff was again reminded that employees were required to score at least an 89 on their shop



reports.  <u>Defendants' Exhibit N</u>, pp. 1-3.  While Plaintiff acknowledged receiving this shop report, she testified that she remembered very little about the incident itself.  <u>Plaintiff's Deposition</u>, p. 176-177.

Approximately three (3) months later, on September 2, 2008, Plaintiff received an Employee Warning Notice from Sauter stating that she had mishandled several leases.  <u>Defendants' Exhibit O</u>.  The Warning Notice stated that Plaintiff had allowed one client to move in after hours when they had gone to Plaintiff's apartment, and that because Plaintiff took issue with the situation she had charged the resident for an extra day of rent that subsequently had to be credited back.  The Warning Notice further related that a client was allowed to move in on August 23, although as of August 28 the client had yet to provide insurance information, which is a move-in requirement.  Finally, the Warning Notice stated that Plaintiff had allowed a client to move in without paying his "Sure Deposit (the security deposit alternative)" or provide their proof of insurance.  The Warning Notice concluded by stating that Plaintiff "absolutely knows customers are not permitted to move in without all monies paid and without all standards followed.  No further guidance will be offered, this is a final warning of all of the above."  In the employee statement portion of this Warning Notice, Plaintiff sought a further clarification or explanation of the incident involving the client being charged for an extra day of rent, but did not discuss the other issues raised.  <u>Id</u>.

At her deposition, Plaintiff conceded that the lease involved in the first incident was dated July 26, 2008, but that the client had been charged rent since July 25, 2008 because that was the day they were supposed to have originally moved in.  Although Plaintiff admitted that she was the one who had moved the client in, she did not admit to making a mistake with respect to this incident.  <u>Plaintiff's Deposition</u>, pp. 188-192.  With respect to the incident involving a client not



paying all monies owed or providing proof of insurance prior to move in, Plaintiff concedes that she allowed a client to move in on August 23, 2008 but had only received a "promissory note" that the client would pay all of the monies owed by August 28, and that on the move-in date she also did not know if the client had the required renter's insurance or not. Plaintiff's Deposition, pp. 193-196. With respect to the third incident, Plaintiff again acknowledged that she had allowed a client to move in without providing proof of insurance or paying a security deposit, but testified that it was Sauter's policy to sometimes allow people to complete their move in requirements after having moved in, even though she admitted that was against company policy. Plaintiff also testified that, while Sauter had not approved this particular move in, that Sauter "had allowed me to do it before". Plaintiff's Deposition, pp. 197-198.

In any event, it is undisputed that this Warning Notice was issued by Sauter, not Cowart, and Plaintiff testified that Sauter was not a racist and that she also did not believe Sauter played any role in the decision to terminate her employment. Plaintiff's Deposition, pp. 59, 87. Plaintiff testified that she did subsequently "[take] it [the Warning Notice] to [Cowart] to recant it", and that Cowart "said that she would take those things off [of her record] after I gave her an explanation to each thing, except for the surety deposit because, of course, I should not have moved [the tenants] in. [The Defendants] policy is not to move anyone in without a deposit". However, Plaintiff testified that Cowart never "recanted" the other two incidents mentioned in the Warning Notice, which she believes was "part of the buildup for firing me in the end because it was always racially – there was already racial tension from the hairy legs write-up." Plaintiff's Deposition, p 65.

Plaintiff also testified to a disagreement she and Sauter had on September 5, 2008 when two prospective tenants walked into the leasing office during what Plaintiff testified was a



"hurricane emergency".[5]  Sauter had sent these prospects in to see the Plaintiff, and Plaintiff testified that she asked the prospects for a couple of minutes to finish handling some cash deposits before helping them.  Plaintiff testified that when Sauter then entered the office, she asked Sauter to handle the transaction, and that Sauter "didn't like that".  Plaintiff further testified that Sauter said something to her, but because Plaintiff has a hearing problem and there was a hurricane outside, she did not hear what she said.  Plaintiff testified that, after she finished with the deposits, she showed the prospects around and "did all the proper proceedings."  Plaintiff testified that when they were coming back to the office, the prospects asked her "Why didn't the white woman help you"?, and Plaintiff told them they could report the incident to the Defendants' corporate office if they wanted to.  Plaintiff testified that she told the prospects: "They do it to me all the time.  It would be fair – it would be nice for somebody else to see what I am going through.  She said, ok."  Plaintiff testified that when she then went back to the office, Sauter was "furious", stating that the prospects "could have been shoppers".  Plaintiff testified that Sauter also accused her of being insubordinate.  <u>Plaintiff's Deposition</u>, pp. 106-109.  Sauter subsequently reported this incident to Cowart.  <u>Cowart Deposition</u>, pp. 94-96.

Plaintiff then had a second incident which Sauter reported as being insubordination on September 18, 2008, when Plaintiff testified that Sauter "justifiably" told her to clean up the clutter on her desk.  <u>Plaintiff's Deposition</u>, p. 114-115.  Plaintiff testified that she responded by asking Sauter to put some of the files in her office, which Sauter apparently thought was rude.  Plaintiff testified that she told Sauter she was not trying to be rude, but acknowledged that Cowart had also "got on me about the clutter on my desk and how unprofessional it looks . . . ."  <u>Plaintiff's</u>

---

[5]Defendants contend that there was no hurricane or hurricane emergency on that date.  <u>Cowart Deposition</u>, p. 94.



Deposition, p. 115-116.

Cowart testified that she ultimately decided to terminate Plaintiff's employment based on a "pattern of poor performance, culminating in three unsatisfactory move-ins and two incidents of insubordination."  Cowart Deposition, p. 63.  Cowart also testified that, following Plaintiff's termination, she was replaced by another African American.  Cowart Deposition, p. 64.

Plaintiff thereafter filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC)[6], subsequently amended, charging that she had been discriminated against on the basis of her race and gender, including a retaliation claim, alleging that she was subjected to gender and racial discrimination by Sauter and Cowart from January 2008 to September 2008 when she was terminated, including being "subjected to racially derogatory comments within earshot and humiliating remarks directly to me."  Plaintiff also alleged that she was subjected to harassment after telling Sauter that she felt she was being racially discriminated against.  See Defendants' Exhibits P-R.  After receiving a Right to Sue Letter, Plaintiff filed this Complaint in United States District Court asserting claims for race discrimination and retaliation, including hostile work environment and wrongful termination based on her race,[7] in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the South Carolina Human Affairs law.  Plaintiff also

---

[6]As South Carolina is a deferral state, Plaintiff could file her administrative claim with SCHAC, instead of with the EEOC. Nelson v. Lockheed Missiles and Space Co., No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.

[7]Although Plaintiff references to sex (gender) discrimination when listing statutes violated in the first paragraph of her Complaint, she has not asserted a gender discrimination claim in her Complaint.



asserts claims for violations of FLSA and the South Carolina Payment of Wages Act, alleging that the Defendants have failed to tender full wages and overtime pay owed to her in violation of those statutes.  See generally, Complaint.

## Discussion

The Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

## I.

## (Disparate Treatment Claim)

Plaintiff first asserts a race discrimination claim for disparate treatment in violation of Title VII, 42 U.S.C. § 1981,[8] and the South Carolina Human Affairs Law (SCHAL), based on her assertion that she was subjected to racial discrimination when she was unfairly disciplined and

---

[8]To pursue a claim under § 1981, Plaintiff must prove that the Defendants "intended to discriminate [against the Plaintiff] on the basis of [her] race, and that the discrimination interfered with a contractual interest."  Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006). See also Sellers v. South Carolina Autism Soc., Inc., No. 11-2163, 2012 WL 988064 at * 4 (D.S.C. March 22, 2012)[Concluding that "at-will employment in South Carolina is contractual in nature and may support a claim under Section 1981."].



discharged. Plaintiff's claim requires proof of intentional discrimination, either by direct evidence

or by the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[9]

Plaintiff has not offered any direct evidence of race discrimination,[10] and the Defendants argue that

Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as

to whether any of the complained of employment actions occurred because of her race under the

<u>McDonnell Douglas</u> proof scheme to survive summary judgment.[11]

---

[9]Although <u>McDonnell Douglas</u> is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. <u>See</u> <u>Ross v. Kansas City Power & Light Co.</u>, 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; <u>Long v. First Union Corp. of Virginia</u>, 894 F.Supp. 933, 945 (E.D.Va. 1995); <u>Kim v. Nash Finch Co.</u>, 123 F.3d 1046, 1063 (8th Cir. 1997). With regard to Plaintiff's South Carolina Human Affairs Law claim, this claim is also evaluated under the same standards as are used for evaluating Plaintiff's claims under Title VII. <u>See</u> <u>Orr v. Clyburn</u>, 290 S.E.2d 804, 806 (S.C.1982); <u>Tyndall v. National Education Centers</u>, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); <u>cf.</u> <u>Cromer v. Greenwood Com'n of Public Works</u>, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.] Therefore, the analysis set forth herein with respect to Plaintiff's claims under Title VII also applies to any claims Plaintiff has asserted under § 1981 and the South Carolina Human Affairs Law.

[10]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996); <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); <u>see</u> <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert.</u> <u>denied</u>, 455 U.S. 943 (1982).

[11]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even though she has presented only circumstantial, or in-direct, evidence of discrimination. Historically, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases, but that is no longer the case. <u>See</u> <u>Hill v. Lockheed Martin</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); <u>cf.</u> <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, since neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis, the undersigned has only evaluated Plaintiff's

(continued...)



The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in <u>McDonnell Douglas</u>. <u>First</u>, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendants unlawfully discriminated against her. <u>Second</u>, once this presumption has been established, the burden of production shifts to the Defendants to show a legitimate, non-discriminatory reason for its actions. <u>Third</u>, if the Defendants show a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendants' asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendants were really based on Plaintiff's race. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-256 (1981); <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the <u>McDonnell Douglas</u> formula and establish a prima facie case of race discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were

---

[11](...continued)

claim using the <u>McDonnell Douglas</u> analysis. <u>See</u> <u>Hopes v. Roche</u>, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing <u>Nagy v. Baltimore Life Ins. Co.</u>, 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]). In any event, Plaintiff has not presented admissible evidence of any mixed-motive by the decision maker in this case and/or any evidence from which a reasonable jury could conclude that race was a motivating factor in the decision to terminate her. <u>See</u>, discussion, <u>infra</u>.



treated more favorably, that she was replaced [in the case of a discharge claim] by someone from outside of her protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. <u>See generally</u>, <u>Austen v. HCA Health Services of Virginia, Inc.</u>, No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); <u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1383 (4th Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 870 (1995). <u>See also</u> <u>Gilbert v. Penn-Wheeling Closure Corp.</u>, 917 F.Supp. 1119 (N.D.W.Va. 1996). It is undisputed that Plaintiff is a member of a protected class [African American], and for purposes of summary judgment the Defendants do not dispute that Plaintiff was subjected to an adverse employment action when she was discharged. However, the Defendants argue that the evidence does not show that Plaintiff was satisfactorily performing her job, or that she was subjected to any adverse employment action under circumstances giving rise to an inference of unlawful discrimination. After careful review and consideration of the arguments and evidence presented, the undersigned is constrained to agree.

   **Whether Plaintiff was performing her job satisfactorily**. It is undisputed in the evidence that Plaintiff failed to follow the proper dress code and was not properly maintaining her guest cards in May 2008, for which she was reprimanded and advised that she would be discharged if she was again found to not be following policy. <u>Defendants' Exhibit L</u>. At her deposition, Plaintiff admitted committing these infractions. <u>Plaintiff's Deposition</u>, pp. 169-170. <u>See also</u> <u>Defendant's Exhibit M</u>. It is also undisputed that Plaintiff received unsatisfactory shop reports in January 2008 and June 2008; <u>see</u> <u>Defendants' Exhibits G, H, I, and N</u>; and that she also received an Employee Warning Notice in September 2008 involving several leasing issues. <u>Defendants' Exhibit O</u>. While at her deposition Plaintiff offered several explanations for what had occurred with respect to these leases, she does not dispute that the way these leases were handled were in violation of company



policy. See Plaintiff's Deposition, pp. 188-198. It is further undisputed that the Warning Notice as well as the September 2008 complaints involving Plaintiff's alleged rudeness and insubordination were all authored by Sauter, not Cowart, and that Plaintiff testified that Sauter is not a racist, nor was her conduct racially motivated. See Plaintiff's Deposition, pp. 59, 87.

This evidence does not show that Plaintiff was meeting her employer's expectations or performing her job satisfactorily. Cf. Beall v. Abbott Labs, 130 F.3d 614, 619 (4th Cir. 1997)[In considering whether a claimant was adequately performing their job, it is the perception of the decision maker which is relevant, not the self assessment of the claimant]; Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997)[inquiry centers upon the employer's beliefs, and not the employee's own perception of [her] performance]; King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003)[On a motion for summary judgment, a Plaintiff's "own testimony . . . cannot establish a genuine issue as to whether [the Plaintiff] was meeting [the employer's] expectations."]. Therefore, Plaintiff has failed to establish this prong of her prima facie case.

**Whether employees who are not members of Plaintiff's protected class were treated more favorably, whether Plaintiff [in the case of discharge] was replaced by someone from outside of her protected class, or there is some other evidence giving rise to an inference of unlawful discrimination.** Even if the Court were to assume for purposes of summary judgment that the evidence was sufficient to create a genuine issue of fact as to whether Plaintiff was adequately performing her job, Plaintiff has provided no evidence to show that she was subjected to any disciplinary action or was discharged because of her race. As previously noted, Plaintiff does not dispute much of the evidence involving her job performance, she affirmatively states that Sauter did not engage in any racially motivated conduct, and she has not provided any evidence to dispute

14



the Defendants' evidence that, following her discharge, she was replaced with another African American.  <u>Hill</u>, 354 F.3d 298 [Noting that Plaintiff failed to establish a prima facie case of discrimination where, by her own admissions of the work performance and rules infractions that led to her termination, she failed to demonstrate that she was performing her job duties at a level that met her employer's legitimate expectations]; <u>Brown v. McLean</u>, 159 F.3d 898, 905 (4th Cir. 1998)["In order to make out a prima facie case of discriminatory termination, a Plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class"].

Plaintiff offers several arguments for why an inference of discrimination should be attached to the Defendants' conduct, but fails to offer any evidence to support those arguments.  First, while Plaintiff attributes a racial motivation to Cowart's decision to terminate her, Plaintiff has produced no evidence whatsoever to show that Cowart, who interviewed and hired Plaintiff for the job in the first place, had any racial animus.  <u>See</u> <u>Buhrmaster v. Overnight Transp.</u> 61 F.3d 461, 464 (6th Cir. 1995) ["[A]n individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."], <u>cert. denied</u>, 516 U.S. 1078 (1996); <u>Cook v. CSK Transp. Corp.</u>, 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of [ ] discrimination...."].  While Plaintiff claims that Cowart's instructions that she cover up her legs if she was not going to shave them evidences some racial animus, she has presented no evidence to support this assertion.  Plaintiff testified that she cannot shave her legs due to pain as a result of Grave's disease.  <u>Plaintiff's Deposition</u>, p. 54.  That has nothing to do with her race, nor does she dispute that the Defendants' handbook includes a dress code which requires employees to dress in a way to favorably impress members of the public, present a businesslike appearance, and practice common sense rules of neatness and good taste.  <u>See</u>



Defendants' Exhibit T [Employee Handbook], p. 29.  Whether one agrees with this policy or not, it has nothing to do with race.  See Hanson v. Highland Homes Holdings, Inc., No. 96-11, 1997 WL 86456 at * 2 (N.D.Tex. Feb. 26, 1997)[Summary judgment granted where Plaintiff alleged race and sex discrimination by employer for requiring that she shave her legs and wear longer dresses, but Defendant had adduced evidence that these requirements reflect, at most, Defendant's grooming preferences.].  Further, Cowart testified that she did not take the decision to address the issue of Plaintiff's hairy legs lightly, and even researched the issue before doing so to make sure it did not relate in any way to race or religion.  Cowart Deposition, pp. 67, 74.  Plaintiff has provided no evidence to dispute Cowart's testimony on this point.  Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....].

Additionally, Plaintiff conceded that, other than possibly one other employee, she did not know if anyone else in her situation, white or black, had ever been treated differently, and with respect to that one other individual (who Plaintiff testified had hairy legs but had *not* experienced any problems with management), that other employee was, like Plaintiff, an African American.  Plaintiff's Deposition, pp. 69-70.  Again, this testimony does not show that Plaintiff received disparate treatment because of her race, as Plaintiff has no evidence to show that any employee similarly situated to her from outside of her protected class was treated more favorably.  Robinson v. United Parcel Services, Inc., No. 06-2601, 2007 WL 3484743 at * 4 (N.D.Ga. Nov. 14, 2007)[Finding that because the only proper comparators in this case were within the same class as the Plaintiff, the Plaintiff had failed to  make any showing of a similarly-situated person outside of her class having received more favorable treatment].

16



Plaintiff also testified that, while she told Sauter she believed some racial motivation may have been involved in the decision about her having to wear pants, she did not make any such statement to Cowart (the decision maker), and only speculates as to whether Sauter shared these concerns with Cowart. Plaintiff's Deposition, p. 92; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on which a jury could reasonably find for the Plaintiff]. In any event, even assuming Sauter did pass this concern on to Cowart, it is also undisputed that following this incident, Cowart secured a raise for the Plaintiff. Plaintiff's Deposition, pp. 167-169; Defendants' Exhibit K. Hence, no evidence of a racial motive or animus has been demonstrated with respect to this issue. Further, since Cowart replaced Plaintiff following her discharge with another African American, there is again no evidence of a racial motivation or animus in Cowart's decision. See Hudson v. Shaw Environmental & Infrastructure, Inc., 267 Fed.Appx. 892, 893-894 (11th Cir. May 6, 2008)[Plaintiff failed to establish a prima facie case for discriminatory termination where he was not replaced by a person from outside the protected class.]; Gibbons v. County Bd. of Educ. of Richmond County, 454 Fed.Appx. 720, 722 (11th Cir. 2011)[Finding that "[n]either [Plaintiff] submitted any evidence to establish that the decision to replace them with a person of the same race 'was a pretextual device specifically designed to disguise an act of discrimination.'"] (quoting Howard v. Roadway Exp., Inc., 726 F.2d 1529, 1535 (11th Cir. 1984)); Roche v. Checkers Drive-In Restaurants, Inc., No. 09-10023, 2009 WL 3854266 at * 9 (E.D.Mich. Nov. 17, 2009)[When Plaintiff is replaced with another person of the same race, he cannot show that he was discriminated against by being replaced by an individual from outside of his



protected class].

Finally, to support a finding of an inference of discrimination in the Defendants' employment decisions, Plaintiff offers the testimony of James Broaddus, who worked for the Defendants as a maintenance technician. Broaddus is an African American. Broaddus testified that the maintenance supervisor at Brackenbrook, Craig Benson, who is white [see Broaddus Deposition, p. 12], treated Plaintiff "[b]adly". Broaddus testified that before he and Benson would start working, Benson would "confront" Plaintiff about "her or what she was wearing and what she should not be doing or doing." Broaddus testified that he thought Benson was acting like "the slave master, per se." Broaddus Deposition, p. 23. When asked why he thought Benson was treating Plaintiff "badly", Broaddus testified: "Well, he wouldn't talk to his wife that way or another white woman that way." Broaddus testified that he thought Benson was "uppity" and rude to the Plaintiff because he "thought it was funny". Broaddus testified that when he told Benson that he did not think his conduct was funny, Benson would "laugh about it and just tell jokes to me about it like [he] didn't care, and I would tell him, you can't do that." Id., p. 25.

Broaddus testified that Benson would make comments to the Plaintiff like: "maybe you shouldn't be wearing that," or "who do you think you are?," or "get me my coffee" or something like that, and that Plaintiff would respond by telling Benson to "cut it out", not to talk to her that way, and to "have some respect". Id., pp. 25-26. However, Broaddus also testified that Benson never used any racially derogatory terms in front of the Plaintiff, although he said Benson had once used the "n" word in front of him, referring to the Plaintiff. Id., p. 31. Broaddus testified that when he then said to Benson "Are you forgetting who are talking to?", Benson "shut down and changed the



conversation." <u>Id</u>., p. 32.[12]  Broaddus testified that Benson may have used the "n" word twice, but he specifically recalled only that one incident.  <u>Broaddus Deposition</u>, p. 107.  <u>Id</u>.  Broaddus testified that Plaintiff complained to Sauter about Benson's treatment of her, which he seconded, and that they mentioned the issue of race discrimination in that conversation with Sauter.  <u>Id</u>., p. 67.  Broaddus testified that after Plaintiff complained to Sauter, that Sauter did call Benson into her office to talk to him, but that "nothing improved, really."  <u>Id</u>., p. 67.

While Plaintiff argues that Broaddus' testimony gives rise to an inference that the Defendants' employment decisions regarding the Plaintiff were based on her race,[13] there is nothing in Broaddus' testimony to give rise to a genuine issue of fact as to whether any of Plaintiff's employee write-ups (most of which are admitted) or her discharge was because of her race.  Benson was not Plaintiff's supervisor,[14] and he was not involved in any of the employment decisions made concerning the Plaintiff.  Further, Sauter, who Plaintiff herself has testified had no racial animus and

---

[12]Although Broaddus testified that he thought this incident occurred in 2006, it clearly occurred after Plaintiff was employed in September of 2007.  <u>Plaintiff's Deposition</u>, p. 24; <u>Broaddus Deposition</u>, p. 32.  Broaddus also testified that this occurred approximately three months before he left the Defendant's employment, but that date is not clear in the record pages submitted.  <u>Broaddus Deposition</u>, p. 107.

[13]After the hearing, defense counsel argued that Plaintiff herself testified that she had also heard Benson use the "n" word.  However, this testimony has not been included in the evidence submitted to the Court.  While Plaintiff did complain in her EEOC filing about racial language being used by maintenance department personnel, and that she and Benson had also discussed this issue; <u>see</u> <u>Defendants' Exhibit P</u>, No. 32-27, p. 2; <u>Defendants' Exhibit Q</u>, No. 32-28, p. 3; for the reasons set forth hereinabove, these assertions (which the undersigned has considered to be true for purposes of summary judgment) fail to save Plaintiff's claim from dismissal.  Plaintiff's EEOC filings also reference some allegedly improper comments made by Darby, but Plaintiff did not address these comments in her brief and did not argue these comments as a basis for her claim at the hearing.

[14]It is undisputed that Benson was not Plaintiff's supervisor.  <u>See</u> <u>Broaddus Deposition</u>, p. 24, <u>Plaintiff's Deposition</u>, p. 217.



did nothing to discriminate against the Plaintiff, counseled Benson about his conduct (according to Broaddus). There is certainly no evidence that Benson's conduct played any role in Plaintiff's employment record or Cowart's decision to discharge her. Cf. Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) ["Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the Plaintiff's burden" of proving discrimination]; Koski v. Standex, Int'l Corp., 307 F.3d 672, 678 (7th Cir. 2002)[Pertinent inquiry is whether the decision maker, as opposed to other managers, have evaluated the aggrieved employee based upon discriminatory criteria]; see also Hill, 354 F.3d at 291.

In sum, while Plaintiff argues that she was treated unfairly by the Defendants because of her race, Plaintiff's own subjective belief, no matter how heartfelt, is simply not sufficient to avoid summary judgment on her disparate treatment claim. Rather, in order to proceed on this claim, Plaintiff must present *evidence* sufficient to give rise to a genuine issue of fact that her treatment was based on race discrimination, not because the Defendants made a mistake (assuming the evidence showed any such mistake), treated her unfairly, or were simply incorrect in their findings or decisions concerning Plaintiff's employment. See Sullivan, 197 F.3d at, cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....]; Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."]; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995)

20



[”Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus”], citing <u>Turner v. Texas Instruments, Inc.</u>, 555 F.2d 1251, 1257 (5th Cir. 1977); <u>Colbert v. Tapella</u>, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting <u>Hairsine v. James</u>, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)[“[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones.”].

Plaintiff has failed to submit any such evidence, and has therefore failed to create a genuine issue of fact as to either the second or fourth prongs of her prima facie case of disparate treatment race discrimination. <u>Boden v. U.S. Amada Ltd.</u>, 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]. This cause of action should therefore be dismissed. <u>Gairola v. Virginia Dep't of General Services</u>, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed “...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [his] disfavorable treatment was the result of discrimination....”]; <u>Hawkins v. Pepsico, Inc.</u>, 203 F.3d 274, 281 (4th Cir. 2000)[affirming the grant of summary judgment to the employer where the employee did not “show that...[the] problems were racial in nature”]; <u>Beale</u>, 769 F.2d at 214 [A party opposing summary judgment “cannot create a general issue of fact through mere speculation or by the building of one inference upon another.”]; <u>Rucker v. Greenville Co. Sheriff Dep't.</u>, No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion].



# II.

## (Retaliation Claim)

Plaintiff's retaliation claim is based on her allegation that, after she complained about racial discrimination, "the Defendants set about a process designed to create a hostile work environment and eventually terminated the Plaintiff." Plaintiff's Brief, p. 11.[15] Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially

---

[15] Retaliation claims and hostile work environment claims are two separate and distinct claims. Bozeman v. Per-Se Technologies, Inc., 456 F.Supp.2d 1282, 1344 n. 149 (N.D.Ga. Oct. 16, 2006)["A hostile work environment claim is a separate and distinct cause of action under Title VII, and requires a different analytical approach than a traditional retaliation claim"]; Murphy v Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011)[Plaintiff's disparate treatment claims, hostile work environment claims, and retaliation claim are all distinct claims and should be alleged in separate counts.]. Therefore, although Plaintiff appears to have combined these two claims for purposes of her argument, since Plaintiff references both "retaliation" and "hostile work environment" in her Complaint and in her brief, the undersigned has addressed these claims separately in this Report and Recommendation.



required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

  **Prima Facie Case**. Considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff engaged in protected activity by complaining to Sauter that she believed her clothing instructions due to her unshaven legs may have been racially motivated, and by complaining to Sauter about Benson's treatment of her. See Plaintiff's Deposition, pp. 57, 59, 77, 92, 96; Broaddus Deposition, pp. 35, 67. It is also undisputed that her discharge constitutes an adverse employment action. However, Plaintiff still must establish a causal connection between these events in order to establish her prima facie case. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"].

  Plaintiff has provided no evidence to show that any of the disciplinary actions taken against her, including her discharge, were related to her complaints of discrimination, other than that



they occurred shortly after she engaged in protected activity.[16]  Nonetheless, since some courts accept a close proximity in time as being sufficient, standing alone, to establish a causal connection (at least for purposes of summary judgment), and in order to allow for a more thorough discussion of Plaintiff's retaliation claim, the undersigned has credited Plaintiff with the establishment of her prima facia case.  Blue v. International Broth. of Elec. Workers Local Union, 159, ____ F.3d _____, 2012 WL 1071704 at * 6 (7th Cir. 2012)[Suspicious "[t]iming supports an inference of retaliation."]; cf. Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Pantoja v. American NTN Bearing Mfg. Corp., 495 F.3d 840, 850 (7th Cir. 2007) [Timing was "suspicious enough to suffice to support [ ] prima facie case."]; see also Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous]; but see Palermo v. Clinton, No. 11-1958, 2012 WL 169125 at * 2 (7th Cir. Jan. 20, 2012)[Suspicious timing alone generally not enough to create a triable issue retaliation case].

**Legitimate Reasons**.  As for whether the Defendants have set forth legitimate, nondiscriminatory reasons for the actions taken, as previously discussed herein, supra, the Defendants' evidence reflects that the Defendants' disciplinary actions and Plaintiff's ultimate discharge were a result of her repeated episodes of misconduct.  This evidence includes not just the documents supporting the disciplinary actions taken, but Plaintiff's own testimony that she in fact committed a number of the infractions cited (although she disputes their severity), all of which is sufficient to establish a legitimate, nondiscriminatory reason for the Defendants' actions.  See EEOC

---

[16]It is not clear in the evidence as to exactly when Plaintiff complained to Sauter about Benson's conduct.  It is clear, however, that her conversation with Sauter concerning her unshaven legs would have occurred a few months before her discharge.



v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion]. Therefore, Plaintiff must present evidence of pretext in the making of these decisions in order to avoid summary judgment on her retaliation claim.

      **Pretext**. In order to show pretext, Plaintiff must show that "but for" the Defendants' intent to retaliate against her because of her having engaged in protected activity, she would not have been subjected to the employment actions at issue. EEOC, 955 F.2d at 941; Conkwright, 933 F.2d at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000). Plaintiff has failed to present any such evidence.

      First, Plaintiff concedes in her own deposition testimony that she in fact committed many of the actions which led to the Warning Notice, her two unsatisfactory shop reports (one of which was based on an inspection which occurred *before* Plaintiff complained about having to cover her unshaven legs), and Sauter's complaints of September 2008. Plaintiff does not really offer a cogent argument in response as to why or how any of these employment reports or her discharge relate to her having made any complaints of discrimination, other than the fact that they apparently occurred in the same calendar year. Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination 'is not



even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.'];  Wilson v. Noble Drilling Services, Inc., 405 Fed. Appx. 909, 914 (5th Cir. Dec. 23, 2010)[While suspicious timing alone has been recognized as enough to establish a prima facie case, it alone is insufficient to show pretext].  Further, Plaintiff has provided no evidence whatsoever to show that Cowart, the decision maker, even knew of Plaintiff's alleged complaints that Cowart's clothing instructions were possibly racially discriminatory.  See Summers v. City of Dotham, Ala., 444 Fed. Appx. 346, 352 (11th Cir. 2011)["[I]n context of Title VII retaliation claims 'neither a court or a jury may impute knowledge to a decision maker who has sworn he had no actual knowledge'"] (quoting Brochu v. City of Riviera Beach, 304 F.3d 1144, 1156 (11th Cir. 2002)).[17]  Of course, Sauter knew about Plaintiff's complaints, but Plaintiff has already conceded that she does not believe Sauter had any animus against her or played any role in her termination; Plaintiff's Deposition, pp. 59, 87; and in any event Cowart was the decision maker, not Sauter

While Plaintiff obviously believes she was dealt with unfairly, and indeed the undersigned makes no finding as to whether the discipline meted out to her was appropriate, Plaintiff has simply provided no evidence to support her general and conclusory allegations that the *reason* she received these adverse employment actions was because she engaged in activity protected by Title VII.  Sullivan, 197 F.3d at 815 ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....].  The mere fact that Plaintiff engaged in protected activity does not immunize her from actions by her employer which may otherwise be justified by her work record or performance; Ross, 759 F.2d at 366 ["Title VII serves the laudable

---

[17]There is some evidence that Cowart knew about Broaddus' complaints about Benson; see Cowart Deposition, p. 45; but Plaintiff has offered no rationale for how that would have resulted in retaliatory conduct against the Plaintiff.



goal of protecting employee access to agencies and courts.  It does not shield employees from normal sanctions for misconduct."]; <u>Bodoy v. North Arundel Hospital</u>, 945 F.Supp. 890, 898 (D.Md. 1996); and since Plaintiff has offered no evidence to show that the actions complained of were the result of unlawful retaliation, other than her own subjective belief and speculation, her retaliation claim should be dismissed.  <u>Rucker</u>, 10-1533, 2012 WL 951789 *2 [Conclusory allegation or denials, without more, are insufficient to preclude the granting of a summary judgment motion]; <u>Palermo</u>, 2012 WL 169125, at * 2 [Suspicious timing alone generally not enough to create a triable issue retaliation case]; <u>Beale</u>, 769 F.2d at 214 [Plaintiff may not "create a genuine issue of fact through mere speculation or the building of one inference upon another"]; <u>Ross</u>, 759 F.2d at 365; <u>McNairn</u>, 929 F.2d at 980; <u>Smith</u>, 618 F.2d at 1067; <u>Komel</u>, 874 F.2d at 475; <u>Williams</u>, 871 F.2d at 456 (citing <u>Gairola v. Virginia Dep't of General Servs.</u>, 753 F.2d 1281, 1288 (4th Cir. 1985)); <u>United Black Fire Fighters of Norfolk v. Hirst</u>, 604 F.2d 844 (4th Cir. 1979).  <u>See</u> Rule 56, Fed.R.Civ.P.; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Felty</u>, 818 F.2d 1129-1130; <u>Gairola</u>, 753 F.2d at 1288, n.4.

<h3 style="text-align:center">III.</h3>

<h3 style="text-align:center">(Hostile Work Environment Claim)</h3>

To avoid summary judgment on her hostile work environment claim, Plaintiff must have evidence sufficient to create a genuine issue of fact that 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on her race; 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to her employer.  <u>EEOC v. Cent. Wholesalers, Inc.</u>, 573 F.3d 167, 175 (4th Cir. 2009); <u>Ocheltree v. Scollon Productions, Inc.</u>, 308 F.3d 351, 356 (4th Cir. 2002), <u>rehearing en banc</u>, 335 F.3d 325 (4th Cir. 2003), <u>cert</u>. <u>denied</u>, 124



S.Ct. 1406 (2004); <u>Spicer v. Com.of Va. Dep't of Corrections</u>, 66 F.3d 705, 710 (4th Cir. 1995);

<u>Brown v. Perry</u>, 184 F.3d 388, 393 (4th Cir. 1999); <u>Scott v. Health Net Federal Services, LLC</u>, No.

11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012).  Plaintiff argues in her brief that the

Defendants "set about a process designed to create a hostile work environment to include banning

the Plaintiff from being able to dress the way she wanted to dress even though no other female in the

company was banned from wearing skirts/dresses, and neglecting to reprimand Mr. Benson and his

continued behavior or derogatory racial comments to the Plaintiff as well as other African American

employees with the company." <u>Plaintiff's Brief</u>, p. 9.[18]  The evidence does not support this argument.

  First, with respect to Cowart's instructions to Plaintiff that she wear pants if she was

not going to shave her legs, Plaintiff has presented no evidence to show that this incident had

anything to do with her race.  In fact, she testified that another African American female who did not

shave her legs was not required to wear pants.  Further, Cowart testified that she researched the issue

prior to giving Plaintiff these instructions to make sure that there was not some racial or religious

---

[18]Defendants correctly note in their brief that, in order to bring a lawsuit in United States District Court under Title VII, Plaintiff had to file her charge of discrimination within three hundred (300) days from the alleged discriminatory act or acts (since South Carolina is a "deferral state") if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, which ever is earlier.  <u>See</u> 42 U.S.C. § 2000e-5(e).  Plaintiff submitted her administrative charge in September or October of 2008, and she subsequently amended it in March of 2009.  <u>Plaintiff's Deposition</u>, p. 202; <u>see</u> <u>also</u> <u>Defendants' Exhibits P, Q and R</u>.  Defendants argue that many of Plaintiff's complaints predate the applicable three hundred (300) day period, and that those complaints or allegations should therefore not be considered by the Court.  However, in appropriate circumstances, a Plaintiff can include prior acts of discrimination under a "continuing violation" theory if she has asserted a hostile work environment claim, as long as an act contributing to the claim has occurred within the filing period.  <u>Cf</u>. <u>Huckabay v. Moore</u>, 142 F.3d 233, 239 (5th Cir. 1998) [distinguishing applicability of the continuing violation theory to hostile work environment claims, for which it may be used, from other types of claims, such as failure to promote]; <u>Godoy v. Maplehurst Bakeries, Inc.</u>, 747 F.Supp. 2d 298, 309 (D. Puerto Rico 2010).



aspect to Plaintiff's failure to shave her legs, and Plaintiff has provided no evidence to dispute this testimony. Therefore, even if the Court were to assume for purposes of summary judgment that Cowart's instructions that Plaintiff wear pants was unwelcome conduct in a work related setting, there is no evidence to show that this conduct was based on Plaintiff's race. Hanson, 1997 WL 86456 at * 2. Additionally, Plaintiff's argument is that Cowart's clothing instructions were part of a process designed to create a hostile work environment because of complaints she had made concerning possible racial discrimination or disparate treatment. However, Plaintiff did not complain (to Sauter - not to Cowart) about having to wear pants until *after* she received these instructions from Cowart. Therefore, this instruction could not have been because of this complaint. Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that the reasons for his alleged mistreatment were discriminatory, Plaintiff cannot establish a prima facie case for relief].

While the evidence does show that Plaintiff had earlier complained to Sauter about Benson's conduct, the evidence before the Court is again insufficient to create a genuine issue of fact as to whether this conduct meets the standard for a hostile work environment claim. First, this conduct occurred before Plaintiff had ever complained about any racial treatment to Sauter. Therefore, it could not have been as a result of complaints she made about racial discrimination, as she argues in her brief. Second, even assuming for purposes of summary judgment that Benson's conduct towards her was sufficiently severe or pervasive to alter Plaintiff's condition of employment and to create an abusive work environment, there is again no evidence to show that this conduct was based on Plaintiff's race. See, discussion, supra. While Broaddus obviously did not like the way Benson treated the Plaintiff, Broaddus did not testify that Benson ever made any race based

29



comments to the Plaintiff, or was bothering or harassing her because of her race. Rather, Plaintiff

(in her brief) and Broaddus (in his testimony) simply speculate that this may have been the case. <u>See</u>

<u>Broaddus Deposition</u>, pp 25, 31-32, 107-108; <u>House v. New Castle County</u>, 824 F.Supp. 477, 485

(D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; <u>Causey v. Balog</u>,

162 F.3d 795, 801-802 (4th Cir. 1998) [conclusory statements, without specific evidentiary support,

do not support a claim for discrimination]; <u>Yarnevic v. Brink's Inc.</u>, 102 F.3d 753, 757-758 (4th Cir.

1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment].

Broaddus further testified that he never heard anyone else at work other than Benson use the "n"

word; <u>Broaddus Deposition</u>, p. 108; and even testified about two specific incidents where

Defendants' managers took affirmative action against their clients when the clients had acted against

Broaddus in a racial manner. <u>Broaddus Deposition</u>, pp. 94-94.

      Hence, while Benson's conduct towards the Plaintiff (as described by Broaddus in his

deposition) was certainly boorish and inappropriate, such conduct does not qualify for a hostile work

environment claim because Plaintiff only speculates that the conduct complained of was based on

a racial animus. <u>See Bolden</u>, 43 F.3d at 551 ["general harassment if not [based on a protected

criteria] is not actionable"]; <u>Causey</u>, 162 F.3d at 802 [case dismissal where no evidence that

employee's alleged mistreatment was based on his race]; <u>Hopkins v. Baltimore Gas & Electric Co.</u>,

77 F.3d 745, 754 (4th Cir. 1996) ["Title VII was not designed to create a federal remedy for all

offensive language and conduct in the work place."]. Plaintiff's complaints in her EEOC filings

about the generally offensive conduct by maintenance personnel at the Apartments are also not

sufficient to support her claim, as sworn testimony or other competent evidence has not been

submitted to show a pervasive and oppressive atmosphere to support these assertions. <u>Burlington</u>

30



Industries, Inc. v. Ellerth, 524 U.S. 742, 768 (1998) (quoting Snell v. Suffolk City, 782 F.2d 1094, 1103 (2d Cir. 1986) ["To establish a hostile atmosphere, . . . . Plaintiffs must prove more than a few isolated incidents of racial enmity."] (Thomas, dissenting); Hall v. Interstate Brands Corp., 395 Fed.Appx. 519, 523 (10th Cir. 2010)[Court dismissed claim of hostile work environment because Plaintiff had only alleged limited, isolated incidents of inappropriate conduct, and had only personally heard one racial comment that was directed at him].

Finally, with regard to Plaintiff's argument that any of the remaining employment actions taken against her were part of a process designed to create a hostile work environment after she had complained about possible racial discrimination or disparities, as has already been discussed herein, supra, Plaintiff has presented no evidence to show that these employment actions, even assuming they were sufficient to create an abusive work environment, had anything to do with her race. Plaintiff has presented no evidence to show that the individuals who participated in the shop reports from January and June 2008 had any sort of animus towards the Plaintiff (or even who these individuals were), or that the deficiencies noted in those shop reports were invalid or in any way contrived.[19] Similarly, there is no evidence reflecting a racial motivation behind Cowart's instructions that Plaintiff wear pants if she was not going to shave her legs, nor has any racial motivation been shown with respect to the Warning Notice issued by Sauter detailing the lease problems cited in that Notice, or with respect to the complaints of insubordination by Sauter in September 2008.

Therefore, as Plaintiff has failed to satisfy her burden with respect to this cause of

---

[19]Further, although Plaintiff testified that "shoppers" were not always accurate, [see Plaintiff's Deposition, p. 103] she has presented no evidence to show that their findings (whether correct or incorrect) should be attributed to the Cowart or Sauter.



action, this claim should be dismissed. Norris v. City of Anderson, 125 F.Supp.2d 759, 769 (D.S.C. 2000) ["Where Plaintiff's allegation contains no [conduct prohibited by Title VII], it cannot be used to support [a] hostile work environment claim"]; Beale, 769 F.2d at 214[A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; Sullivan, 197 F.3d at 815, cert. denied, 530 U.S. 1262 (2000) ["Without a showing that the reasons for his alleged mistreatment were discriminatory, Plaintiff cannot establish a prima facie case for relief]; Causey, 162 F.3d at 801-802 [Affirming summary judgment wherein employee failed to show that his employer's alleged mistreatment was based on her race].

## IV.

### (Wage Claim)

Plaintiff's final claim is that the Defendants intentionally and willfully breached the terms and conditions of her employment by failing to tender full wages owed to her in violation of the South Carolina Payment of Wages Act and the Fair Labor Standards Act. Specifically, Plaintiff alleges that during her period of employment with the Defendants she worked overtime hours for which she was not fully paid. Complaint, pp. 6-7.

The South Carolina Payment of Wages Act; S.C. Code Ann. § 41-10-10, et seq.; creates a cause of action against an employer by an employee for failure of the employer to pay wages as required under that Act. See S.C. Code Ann. § 41-10-80(C). Here, however, Plaintiff's claim is for unpaid overtime, which she also seeks under the Fair Labor Standards Act (FLSA). The FLSA was enacted as a comprehensive, exclusive remedial scheme to address employees' right to overtime pay. See 29 U.S.C. § 215(a)(3). Therefore, as Plaintiff is seeking compensation under a state law for overtime pay otherwise required by the FLSA, her claim under the South Carolina Payment of



Wages Act is subject to dismissal.  Cf. McMurray v. LRJ Restaurants, Inc., No. 10-1435, 2011 WL 247906 (D.S.C. Jan. 26, 2011); Nimmons v. RBC Insurance Holdings (USA), Inc., No. 07-2637, 2007 WL 4571179 (D.S.C. Dec. 27, 2007).

Turning to consideration of this claim under the FLSA, this statute entitles employees to overtime compensation if they work more than forty (40) hours a week. 29 U.S.C. § §206(a)(1), 207(a)(1).  If an employee works in excess of forty (40) hours, the employer must pay overtime at a rate one and one half times the employee's regularly hourly rate for those excess hours.  29 U.S.C. § §207(a)(1).  Plaintiff testified at her deposition that she "worked until 6:00 a lot of times from the 1st to the 6th" for which she did not get compensated.  However, Plaintiff could not recall the specific dates that she alleges she worked overtime and was not paid, and was also not "exactly sure' how much total money was involved.  Plaintiff's Deposition, pp. 119-120.  Plaintiff did concede, however, that she never demanded payment for overtime from the Defendants.  Plaintiff also testified that, although time sheets were kept, they were never turned in showing overtime worked.  Id., pp. 123-124.  In fact, the time sheets Plaintiff turned in to the Defendants showed that she left at 5:00 p.m. every day, and Plaintiff testified that she never told Cowart about working overtime.  Id., p. 127.

Defendants assert that they are entitled to summary judgment on this claim for two reasons.  First, Defendants argue that since Plaintiff never told Cowart or anyone else in management with the Defendants that she was working overtime for which she was not being paid, there has been no violation of the FSLA.  See David v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986); Forrester v. Roth's IGA Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981)["Where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the



33

employer's failure to pay for the overtime hours is not a violation of [the FSLA]"]. Defendants argue that since Plaintiff never notified Cowart that she was working overtime for which she was not being paid, and never demanded payment for overtime, she is not entitled to relief under this cause of Action. See also, Plaintiff's Deposition, pp. 74-75, 127. However, while there is no credible evidence that anyone in upper management was aware of this alleged situation,[20] Plaintiff clearly testified that her supervisor, Sauter, was not only aware of the situation, but created the situation in order to allow her to leave early. See Plaintiff's Deposition, pp. 75, 77, 119-120, 125-126. It is undisputed that Sauter was Plaintiff's supervisor [see Plaintiff's Deposition, pp. 96, 119-120, 217] and Defendants have provided no authority to support their claim that the knowledge of "senior" management is required to have a violation under the Statute. Therefore, the undersigned does not find that the Defendants are entitled to relief on this basis.

Defendants also correctly note that the FLSA has a two (2) year statute of limitations unless the violation is willful, in which case the statute of limitations expands to three (3) years. 29 U.S.C. § 225; see Jones v. Deja Vu, Inc., 419 F.Supp.2d 1146, 1149 (N.D.Ca. 2005). It is undisputed that Plaintiff was terminated on September 23, 2008, and that she did not file her lawsuit until September 27, 2010, over two (2) years later. However, Plaintiff testified that she was specifically instructed by Sauter not to report her overtime because she was allegedly working the extra hour to cover for Sauter. See Plaintiff's Deposition, p. 124. Viewing Plaintiff's testimony in the light most

---

[20]Although Plaintiff contends that she believes Summer Shown would have told Cowert about the extra hours that Plaintiff was working [see Plaintiff's Deposition, p. 213], there is no admissible evidence to support this assertion. Further, although Plaintiff testified at one point that "upper management" knew, she had immediately prior to that statement said "no" when asked if anyone in upper management knew. See Plaintiff's Deposition, pp. 126-127. Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999)[A Plaintiff cannot create an issue of fact sufficient to survive summary judgment by contradicting her own previous sworn testimony].



favorable to her, the undersigned cannot find the alleged violation was not willful based on this testimony. Therefore, Plaintiff is entitled to the three (3) year limitations period for willful conduct, and this claim is not subject to dismissal for having been filed outside of the applicable statute of limitations.

However, although the undersigned finds that Plaintiff's claim is not time barred, she faces an additional hurdle. Although Plaintiff testified that she reported on her time card that she worked until 5:00 p.m. when she actually worked until 6:00 p.m., Plaintiff's offer of employment letter specifically stated that Plaintiff's hours could vary from generally 8:00 to 5:00 or 9:00 to 6:00. See Defendant's Exhibit E. Therefore, Plaintiff's testimony that she sometimes worked until 6:00 does not necessarily indicate a violation of the statute. Furthermore, and more importantly, Plaintiff has provided no specific dates or times for when these alleged violations occurred, but rather only makes the conclusory statement that she worked lots of overtime. See Plaintiff's Deposition, pp. 119-120. At the hearing, Plaintiff's counsel conceded that the record did not contain any specific details which would allow for a calculation of any overtime hours which were not paid, and without any factual allegations of dates and actual times worked, there is not sufficient evidence to determine whether overtime was actually worked or what amount of money, if any, is owed. See Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 441 (5th Cir. 2005)[Plaintiff's conclusory allegation that she had worked 210 hours of unpaid overtime was insufficient to meet her burden].

> [For] an employee [to] me[e]t her requisite burden of proof '[ ] [she must] prove[] that [she] has in fact performed work for which [she] was improperly compensated and [ ] produce[ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. [Only upon the production of such evidence does] the burden shift[ ] to the employer to come forward with evidence of the precise amount of work performed or with evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence.'"



Id. (quoting <u>Anderson v. Mount Clemens Pottery Co.</u>, 328 U.S. 680, 687-88 (1946).

Therefore, Plaintiff has failed to meet her burden to show an alleged violation of the Statute, and this claim should be dismissed.

## <u>Conclusion</u>

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 26, 2012
Charleston, South Carolina



## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

