IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Latricia Bowen, <br><br> Plaintiff, <br> v. <br><br> Darby Development Company, Inc., <br> And Darby Realty Company, Inc., <br><br> Defendants. | Civil Action No. 2:10-cv-2509-RMG <br><br> **ORDER** |

In this action, Plaintiff, a former employee of Defendants, asserts claims of racial discrimination and failure to pay overtime wages. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(g) DSC, this matter was automatically referred to the United States Magistrate Judge for all pretrial proceedings. On February 9, 2012, Defendants filed a motion for summary judgment as to all of Plaintiff's claims. (Dkt. No. 32). On March 12, 2012, Plaintiff filed a response in opposition (Dkt. No. 36), and on April 2, 2012, Defendants filed a reply (Dkt. No. 40). On April 13, 2012, United States Magistrate Judge Bristow Marchant held a hearing on Defendants' motion. On April 26, 2012, the Magistrate Judge issued a Report and Recommendation recommending that this Court grant Defendants' motion for summary judgment and dismiss this case. (Dkt. No. 43). On May 14, 2012, Plaintiff filed objections to the Report and Recommendation (Dkt. No. 45), and on June 11, 2012, Defendants filed a reply to those objections (Dkt. No. 48). After carefully considering the record, the relevant law, and the Report and Recommendation, the Court hereby adopts the Report and Recommendation, as explained more fully below.

1

## I. Report and Recommendation of the Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* Where a party fails to file any specific objections, the Magistrate Judge's conclusions are reviewed only for clear error, *see Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and this Court is not required to give any explanation for adopting the recommendation of the Magistrate Judge. *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

## II. Summary Judgment Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat. Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the nonmoving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Rule 56 provides in relevant part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

### III. Analysis

#### a. Plaintiff's Allegations and Factual Background

In this case, Plaintiff asserts that Defendants violated her civil rights pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act. (Dkt. No. 1). Further, Plaintiff asserts that Defendants failed to pay her overtime in violation of the Fair Labor Standards Act (FLSA) and the South Carolina Payment of Wages Act. (*Id.*). While the Magistrate Judge's Report and Recommendation provides a thorough discussion of the relevant facts in the record, the Court will highlight the basic facts of this case before discussing Plaintiff's claims. Plaintiff began working for Defendants in September of 2007 as an assistant property manager for the

3

Brackenbrook Apartments, which is one of the properties owned by Defendants. Plaintiff was interviewed by and hired by Victoria Cowart, Defendants' Vice President of Property Management. Ms. Cowart is white, and Plaintiff is African-American. Plaintiff's job involved assisting Tiffany Sauter, the head property manager for Brackenbrook Apartments, showing the apartments to prospective tenants, following up with prospective tenants, getting tenants to sign leases, and collecting money pursuant to leases.

The first incident of note during Plaintiff's employment with Defendants occurred on January 4, 2008, when Plaintiff received a "shopped" report in which Plaintiff received a poor score. One of the ways in which Defendants evaluate their property managers is by having potential tenants "shop" the property managers by visiting the property and then submitting a written report scoring the property manager's performance. Defendants' property managers are informed about this practice upon being hired and are told that Defendants require them to score at least 89% on their shop reports. Plaintiff received a 71% on the January 4, 2008 shop report. (Dkt. No. 32-17). On January 8, 2008, Ms. Cowart sent a memo to Ms. Sauter, copying Plaintiff, regarding Ms. Sauter's responsibility for ensuring Plaintiff's performance was up to par. (Dkt. No. 32-18). In the last paragraph of the memo, Ms. Cowart noted that Defendants' dress code as set forth in the employee handbook requires employees to present a businesslike appearance and avoid anything that might be "distracting." Ms. Cowart then wrote: "With that said, females who wish to have unconventional body hair, must cover it so as to present a neat and non-distracting appearance. Therefore, if LaTricia [Bowen] wishes to maintain this aspect of her appearance, she may only wear career apparel pants and no skirts." (*Id.*). Ms. Cowart required Plaintiff to sign the memo and return it to her. Plaintiff has testified that she believes that Ms. Cowart was being racist by requiring her to shave her legs. (Dkt. No. 36-2 at 9-10 ("I am an African

4

American woman who chooses not to shave her legs, and I thought that they were in some way being somewhat prejudice [sic] towards me.")). After signing the memo, Plaintiff and Ms. Cowart had a phone conversation regarding the requirement that Plaintiff wear pants if she refused to shave her legs.[1] Plaintiff stated that she disagreed with the requirement, but apparently did not state her belief that the requirement was racially motivated. (Dkt. No. 32-19; Dkt. No. 32-10 at 1-2). While Plaintiff states that she is unsure whether she ever told Ms. Cowart that she believed the requirement was racially motivated, Plaintiff testified that she told Ms. Sauter of this belief, and she believes Ms. Sauter would have told Ms. Cowart about their conversation. (Dkt. No. 32-8 at 3).

On May 13, 2008, Ms. Cowart wrote a file memo regarding a visit she had made to Brackenbrook in which Ms. Cowart discovered that Plaintiff was not wearing proper business attire – specifically, she was not wearing proper business shoes or her career apparel blazer – and in which Ms. Cowart's inspection of guest cards revealed that Plaintiff had not been following up with guests as required by company policy. (Dkt. No. 32-22). The memo states that, after Ms. Cowart's visit, Ms. Sauter informed Plaintiff that she would be fired if Ms. Cowart found out that Plaintiff failed to follow the following up policy again. (*Id.*). In her deposition, Plaintiff admitted that this incident occurred and that Plaintiff consistently had a problem following up with guests throughout her employment with Defendants. (Dkt. No. 32-9 at 2-4; 32-10 at 7)). On June 12, 2008, Plaintiff received a shop report based on a May 20th visit from "shoppers." (Dkt. No. 32-24). Plaintiff received an overall score of 70.4% on this shop report.

On September 2, 2008, Plaintiff received an Employee Warning Notice from Ms. Sauter regarding several leases which Ms. Sauter claimed Plaintiff mishandled. (Dkt. No. 32-25; 32-

---

[1] Plaintiff has testified that she has a disease which makes it painful for her to shave her legs. Defendants apparently were unaware of Plaintiff's condition.

5

26). On September 5, 2008, Plaintiff and Ms. Sauter had a disagreement in which Ms. Sauter believed that Plaintiff was insubordinate. Plaintiff testified that Ms. Sauter was "furious" with Plaintiff after the incident. (Dkt. No. 32-9 at 5-8). Ms. Sauter later reported this incident to Ms. Cowart. On September 18, 2008, Plaintiff and Ms. Sauter had another disagreement in which Ms. Sauter felt that Plaintiff was being insubordinate and rude and which Ms. Sauter reported to Ms. Cowart. (*Id.* at 10-12). Shortly after this incident, Ms. Cowart terminated Plaintiff. Ms. Cowart testified that she terminated Plaintiff based on a "pattern of poor performance, culminating in three unsatisfactory move-ins and two incidents of insubordination." (Dkt. No. 32-3 at 5). Following Plaintiff's termination, Ms. Cowart hired someone to fill Plaintiff's position who is also an African American woman. (*Id.* at 6). Plaintiff testified that she believed all of her write-ups were because "I was an African-American woman with hairy legs that tested Ms. Victoria Cowart, and because I had openly said that I thought she was racist towards me, which I feel like she had privy to know." (Dkt. No. 36-2 at 19). Thus, Plaintiff asserts that Defendants are liable for disparate treatment and retaliation under 28 U.S.C. § 1981 and Title VII.

While not specifically mentioned in Plaintiff's charge to the EEOC or in Plaintiff's Complaint in the case *sub judice*, one of the maintenance workers for Brackenbrook, Mr. Major Broaddus, testified that another maintenance worker, Mr. Craig Benson, mistreated Plaintiff during her employment with Defendants. (Dkt. No. 36-5). Mr. Broaddus testified that Mr. Benson would act like a "slave master" towards Plaintiff, even though Plaintiff was almost like Mr. Benson's boss, and that Mr. Benson used the "N" word in reference to Plaintiff behind her back. (*Id.*). In her response to Defendants' motion for summary judgment, Plaintiff argues that the testimony about Mr. Benson's mistreatment of her creates a genuine issue of material fact as

to whether Defendants are liable for allowing a hostile work environment to exist during Plaintiff's employment with Defendants. Finally, Plaintiff alleges that she worked overtime and was never paid for it. (Dkt. No. 1 at 6-7). Specifically, Plaintiff alleges that she stayed late to cover for Ms. Sauter when Ms. Sauter would leave early, but that they would never tell Ms. Cowart about this because it was not allowed. Thus, Plaintiff argues that she is entitled to recover from Defendants pursuant to the Fair Labor Standards Act and the South Carolina Payment of Wages Act.

### b. Application of Law

In his Report and Recommendation, the Magistrate Judge provides a thorough discussion of the relevant law along with an application of the law to the facts. The Court finds that the Magistrate Judge's Report and Recommendation correctly explains why Defendants are entitled to summary judgment on each of Plaintiff's claims, with one exception discussed below. Nevertheless, the Court briefly discusses the bases for its holding herein.

With regard to Plaintiff's disparate treatment claim, Plaintiff has failed to establish a prima facie case of race discrimination, which is the first step in establishing a disparate treatment claim pursuant to the *McDonnell Douglas* framework.[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234-35 (4th Cir. 1991). In order to establish a prima facie case of race discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, that she was replaced (in the case of a discharge claim) by someone from outside of her protected class,

---

[2] Plaintiff has not offered any direct evidence of discrimination. Thus, the Plaintiff must rely on the *McDonnell Douglas* framework.

7

or that there is some other evidence giving rise to an inference of unlawful discrimination. *See Austen v. HCA Health Servs. of Virginia, Inc.*, 5 Fed. Appx. 253 (4th Cir. 2001); *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995).

As explained in the Magistrate Judge's Report and Recommendation, while Plaintiff has established elements one and three, Plaintiff has failed to create a genuine issue of material fact with regard to elements two and four. Even viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff was not performing her job to the satisfaction of Ms. Sauter, whom Plaintiff has admitted she does not believe is racist or ever racially discriminated against her. (Dkt. No. 32-7 at 1; 32-8 at 2). The incidents which immediately preceded Plaintiff's termination were incidents in which Ms. Sauter became upset with Plaintiff and reported the incidents to Ms. Cowart. Further, Plaintiff has not provided any evidence giving rise to an inference that she was discriminated against by Ms. Cowart based on her race. *Cook v. CSK Trasp. Corp.*, 988 F.2d 507, 513 (4th Cir. 1993) ("[U]nsupported allegations do not establish a prima facie case of race discrimination under Title VII."). To the contrary, the evidence indicates that Ms. Cowart did not discriminate against Plaintiff based on her race. For example, Ms. Cowart filled Plaintiff's position with another African-American. *See Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998) ("In order to make out a prima facie case of discriminatory termination, a Plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class."). Also, Ms. Cowart made the decision to hire Plaintiff, notwithstanding the fact that Plaintiff is African American, and Ms. Cowart made the decision to terminate Plaintiff approximately one year later. *See Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995) ("An individual who is willing to hire and promote someone of a certain class is unlikely to fire them simply because they are a

member of that class."); *see also* Dkt. No. 32-5 at 4-5 (Plaintiff testifying that Ms. Cowart was "delighted with" Plaintiff when she interviewed her and that they had a good relationship at first). For these reasons and for the additional reasons set forth in the Report and Recommendation, Defendants are entitled to summary judgment on Plaintiff's disparate treatment claim.

With regard to Plaintiff's retaliation claim, the Court again agrees with the reasoning set forth in the Magistrate Judge's Report and Recommendation. Although Plaintiff testified that she complained to Ms. Sauter that she believed racial animus was behind the requirement that she cover her hairy legs, Plaintiff has not presented any evidence that Ms. Cowart – whom Ms. Sauter may or may not have informed of Plaintiff's complaint – based her decision to terminate Plaintiff on this complaint. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("To survive summary judgment, therefore, [plaintiff] must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action."). Even if Plaintiff could establish the causal connection required for a prima facie case, Plaintiff has not shown that Defendants' asserted legitimate reasons for terminating her are pretextual. For these reasons and for the additional reasons set forth in the Report and Recommendation, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

With regard to Plaintiff's hostile work environment claim, the Court agrees with the Magistrate Judge's Report and Recommendation, aside from one conclusion discussed below. As explained in the Report and Recommendation, to avoid summary judgment on her hostile work environment claim, Plaintiff must provide evidence sufficient to create a genuine issue of fact that 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct

complained of was based on her race; 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to her employer. *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Here, Plaintiff argues that Defendants created a hostile work environment by requiring her to wear pants to cover her hairy legs, by writing her up in situations when other employees would not be written up, and by allowing Mr. Benson to mistreat her. With regard to the requirement that Plaintiff wear pants and the situations in which Plaintiff was written up, Plaintiff has not provided any evidence indicating that this conduct was based on her race or that such conduct was sufficiently severe or pervasive to alter Plaintiff's condition of employment and to create an abusive work environment. With regard to Mr. Benson's alleged mistreatment of Plaintiff, the Court finds as a matter of law that this alleged conduct was not sufficiently severe or pervasive to alter Plaintiff's condition of employment and to create an abusive work environment.[3] Accordingly, Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

---

[3] In the Report and Recommendation, the Magistrate Judge addresses Plaintiff's hostile work environment claim with regard to Mr. Benson's alleged mistreatment of Plaintiff. (Dkt. No. 43 at 29-31). The Magistrate Judge states: "Second, even assuming for purposes of summary judgment that Benson's conduct towards [Plaintiff] was sufficiently severe or pervasive to alter Plaintiff's condition of employment and to create an abusive work environment, there is again no evidence to show that this conduct was based on Plaintiff's race." (*Id.* at 29). The Court disagrees with this sentence and finds that, if Mr. Benson's conduct towards Plaintiff had been sufficiently severe or pervasive to alter Plaintiff's condition of employment and to create an abusive work environment, there *is* evidence indicating that such conduct was based on Plaintiff's race. (*See* Dkt. No. 32-12 at 7 (deposition testimony of Major Broaddus, a maintenance worker who worked with Mr. Benson, testifying that he heard Mr. Benson use racial epithets about Plaintiff behind her back)). However, as stated above, the Court finds as a matter of law that Mr. Benson's alleged mistreatment of Plaintiff was not sufficiently severe to constitute a Title VII violation. While the Court believes racial epithets such as the one allegedly used by Mr. Benson are very serious, the record shows that Mr. Benson never used such racial epithets in the presence of Plaintiff. Further, Mr. Benson's mistreatment of Plaintiff could not have been too severe, considering Plaintiff did not even mention Mr. Benson's mistreatment of

Finally, with regard to Plaintiff's claim that she was not paid for overtime worked, the Court agrees with the reasoning set forth in the Magistrate Judge's Report and Recommendation. As explained therein, Plaintiff has not provided any evidence of the amount of overtime that she allegedly worked. *See Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (holding that an employee alleging that she performed work for which she was improperly compensated must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" before the burden shifts to the employer) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). Accordingly, Defendants are entitled to summary judgment on Plaintiff's minimum wage claims.

## Conclusion

As explained herein, the Court adopts the Report and Recommendation of the Magistrate Judge, subject to the comment in footnote 3, *supra*. Accordingly, Defendants' motion for summary judgment is granted, and Plaintiff's Complaint is dismissed with prejudice.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

July 6, 2012
Charleston, South Carolina

---

her in her EEOC complaint (*see* Dkt. No. 32-27) and considering Plaintiff testified that, at the time she was terminated, her overall impression of Mr. Benson was neither positive nor negative. (Dkt. No. 32-6 at 5). In sum, there is insufficient evidence in the record to create a genuine issue of material fact as to whether Mr. Benson's alleged mistreatment of Plaintiff was sufficiently severe to constitute a Title VII violation. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.").